# IN THE SUPREME COURT OF IOWA

No. 90 / 04-1271

Filed April 20, 2007

**STATE OF IOWA**,

    Appellee,

vs.

**KENNETH DALE CARTER**,

    Appellant.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Webster County, Fredrick E. Breen, District Associate Judge.

Defendant appeals from conviction of possession of marijuana in violation of Iowa Code section 124.401(5) (1997). **DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED; CASE REMANDED**.

Mark C. Smith, State Appellate Defender, Shellie L. Knipfer, Assistant State Appellate Defender, and Travis Johnson, Drake Student Intern, for appellant.

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, Timothy N. Schott, County Attorney, and Jonathan Beaty, Assistant County Attorney, for appellee.

**LARSON, Justice.**

Kenneth Carter appealed his conviction for drug possession, claiming that evidence seized from his home was erroneously admitted into evidence. The district court rejected his argument, as did the court of appeals. On further review, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand.

## I. *Facts and Prior Proceedings.*

Kenneth Carter was charged with drug offenses based on evidence seized in a March 1997 search of his home. That case was dismissed on application of the State and is not involved in this appeal. After the case was dismissed, the Iowa Department of Revenue and Finance (department) began proceedings under Iowa Code chapter 453B (1997) to collect drug taxes in the amount of $6060, based on Carter's possession of marijuana plants observed during the March 1997 search. Despite the fact that the criminal case arising out of that possession had been dismissed, the department, on December 4, 1997, obtained an administrative search warrant to search Carter's home again. A representative of the department and a police officer served the warrant and, in the process, noted marijuana odor and a marijuana pipe. Based on this information, the police officer applied for, and obtained, a criminal search warrant to search Carter's home again. This search yielded the marijuana that provided the basis for the present prosecution. Carter was convicted, and he appealed. His conviction was affirmed by this court in an unreported decision in 1999. In that decision, we reserved his ineffective-assistance claim for possible postconviction relief proceedings.

On Carter's postconviction application, the district court set aside his conviction and ordered a new trial. Prior to the new trial, Carter filed a motion to suppress, claiming that the marijuana evidence was seized in

violation of his federal and state constitutional rights. The motion did not provide specific grounds for the constitutional arguments, but the district court at the hearing on the motion put the issue in sharp focus:

> My understanding is that the legal issue is rather narrowly defined, that says if the officer had the right to be in the place where he was when he made the observations at the time of the execution of the administrative warrant, then the criminal warrant is not invalid. If, on the other hand, he had no right to be where he was because of something improper about the execution or granting of the administrative warrant, then the criminal warrant is no good.

As the district court noted, the administrative search warrant provided the basis for the later issuance of the criminal warrant. Carter contends that the administrative warrant was invalid, and the evidence seized as a result of it was therefore inadmissible under the principle of fruit of the poisonous tree.

## II. *Standard of Review.*

We review challenges to the constitutionality of a statute de novo. *State v. Seering,* 701 N.W.2d 655, 661 (Iowa 2005). Statutes are presumed to be constitutional, and a challenger must prove unconstitutionality beyond a reasonable doubt. *Id.*; *Schroeder Oil Co. v. Dep't of Revenue & Fin.,* 458 N.W.2d 602, 603 (Iowa 1990). The challenger must refute every reasonable basis upon which the statute could be found constitutional, and if the statute may be construed in more than one way, we adopt the construction that does not violate the constitution. Iowa Code § 4.4 ("In enacting a statute, it is presumed that: (1) Compliance with the Constitutions of the state and of the United States is intended."); *Seering,* 701 N.W.2d at 665.

## III. *The Statutes.*

A. *The drug-tax statute in general.* Iowa Code chapter 453B imposes an excise tax on dealers of certain controlled substances, including

marijuana. *See* Iowa Code §§ 453B.1(3)(*c*) (covering marijuana plants), 453B.7 (imposition of tax). The statute does not require a conviction, or even an arrest, for drug dealing in order to impose the excise tax. *Id.*; *see State v. Eames*, 565 N.W.2d 323, 324 (Iowa 1997) (conviction of mere possession). At the time of the administrative search in this case, there was not even a pending criminal case.

B. *Jeopardy assessments in general.* Iowa Code section 422.30 provides for the collection of taxes through jeopardy assessments:

> If the director believes that the assessment or collection of taxes will be jeopardized by delay, the director may immediately make an assessment of the estimated amount of tax due, together with all interest, additional amounts, or penalties, as provided by law. The director shall serve the taxpayer by regular mail at the taxpayer's last known address or in person, with a written notice of the amount of tax, interest, and penalty due, which notice may include a demand for immediate payment. Service of the notice by regular mail is complete upon mailing. A distress warrant may be issued or a lien filed against the taxpayer immediately.

A jeopardy assessment, which is in the nature of an emergency-collection procedure, is defined as "[a]n assessment by the [taxing authority]—without the usual review procedures—of additional tax owed by a taxpayer who underpaid, based on the [tax authority's] belief that collection of a deficiency would be jeopardized by delay." *Black's Law Dictionary* 112 (7th ed. 1999). Jeopardy assessments are part of what we have described as "the department's sweeping tax collection authority." *Lumbermens Mut. Cas. Co. v. State*, 564 N.W.2d 431, 434 (Iowa 1997).

C. *Drug taxes and the jeopardy assessment statute.* Section 422.30, our general jeopardy assessment statute quoted above, is limited by its terms to cases in which collection by ordinary means will be jeopardized by delay. However, Iowa Code section 453B.9 creates a special presumption that *all* assessments in drug-tax cases are jeopardy assessments:

> *All assessments of taxes made pursuant to this chapter shall be considered jeopardy assessments or collections as provided in section 422.30.* The director shall assess a tax, interest, and applicable penalties based on knowledge or information available to the director; serve the taxpayer by regular mail at the taxpayer's last known address or in person, a written notice of the amount of tax, interest, and penalty due, which notice may include a demand for immediate payment; and immediately proceed to collect the tax, interest, and penalty by any method prescribed in section 422.30. The period for examination, determination of amount of tax owed, and assessment is unlimited. Service of the notice by regular mail is complete upon mailing.

(Emphasis added.) The effect of this statute is to eliminate in all drug cases any requirement that the director establish the need for the jeopardy assessment or even that he "believes" the assessment is in jeopardy as required by Iowa Code section 422.30 for other jeopardy assessments.

D. *The administrative search.* Pursuant to section 453B.9, the director issued a distress warrant, directed to the sheriff, ordering him

> to forthwith distrain, seize, garnish or levy upon . . . any and all real or personal property belonging to the above said delinquent account . . . sufficient to satisfy said Tax Liability, plus sheriff & court costs, and to make due and prompt return to the Department of Revenue and Finance in Des Moines, Iowa or the District Court under Chapters 626 & 642, all taxes, penalty, interest penalty, interest and accrued costs so collected . . . .

To assist the sheriff in locating assets from which to satisfy the amount of drug tax due, the department applied for an administrative search warrant under Iowa Code section 453B.11:

> The director may petition the district court or a magistrate for an administrative search warrant as authorized by section 808.14 to execute a distress warrant authorized by section 422.26.

Section 808.14, in turn, provides authority for courts to issue administrative search warrants "in accordance with the statutory and common law requirements for the issuance of such warrants."

#### IV. *The Issue.*

The issue is whether the criminal search warrant, which yielded the evidence in question in this case, was valid, and that, in turn, depends on whether the administrative search that preceded it was valid. If the administrative search was not valid, the fruits of that search were inadmissible under the principles of the fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); *cf. Adams v. State*, 762 N.E.2d 737, 744 (Ind. 2002) (preliminary search under distress warrant revealed drugs leading to criminal warrant).

The defendant argues the searches were invalid under the Fourth Amendment to the United States Constitution and article 1, section 8 of the Iowa Constitution. For purposes of this opinion, we will refer to the rights protected by the federal and state constitutions collectively as "Fourth Amendment rights." The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The scope and purpose of Iowa's search and seizure clause is coextensive with the federal court's interpretation of the Fourth Amendment. *State v. Loyd*, 530 N.W.2d 708, 711 (Iowa 1995). In *State v. Eames*, we examined section 453B.9 from a standpoint of procedural due process and found that it was constitutional. 565 N.W.2d at 328. However, Fourth Amendment issues were not involved in *Eames*.

Administrative searches, like searches for evidence of crime, are encompassed by the Fourth Amendment. *Michigan v. Tyler*, 436 U.S. 499, 504-05, 98 S. Ct. 1942, 1947, 56 L. Ed. 2d 486, 495 (1978). In fact, "one of the primary evils intended to be eliminated by the Fourth Amendment was

the massive intrusion on privacy undertaken in the collection of taxes pursuant to general warrants and writs of assistance." *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 355, 97 S. Ct. 619, 630, 50 L. Ed. 2d 530, 545 (1977). Nevertheless, administrative searches are treated differently, for Fourth Amendment purposes, because generally the intrusion on privacy is reduced. *See Camara v. Mun. Ct. of San Francisco*, 387 U.S. 523, 537, 87 S. Ct. 1727, 1735, 18 L. Ed. 2d 930, 940 (1967). An administrative search warrant does not require the probable cause necessary for a criminal warrant. *See O'Connor v. Ortega*, 480 U.S. 709, 107 S. Ct. 1492, 94 L. Ed. 2d 714 (1987). According to *O'Connor,*

> "[w]here a careful balancing of governmental and private interests suggests that the public interest is best served by a Fourth Amendment standard of reasonableness that stops short of probable cause, we have not hesitated to adopt such a standard." We have concluded, for example, that the appropriate standard for administrative searches is not probable cause in its traditional meaning. Instead, *an administrative warrant can be obtained if there is a showing that reasonable legislative or administrative standards for conducting an inspection are satisfied.*

*Id.* at 723, 107 S. Ct. at 1500, 94 L. Ed. 2d at 726 (emphasis added) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 341, 105 S. Ct. 733, 742, 83 L. Ed. 2d 720, 734 (1985)). Based on this principle, and as applicable to the present case, the validity of an administrative warrant turns on whether "reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling." *Camara*, 387 U.S. at 538, 87 S. Ct. at 1736, 18 L. Ed. 2d at 941; *accord Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320-21, 98 S. Ct. 1816, 1824, 56 L. Ed. 2d 305, 316 (1978).

With these general principles in mind, we look to the proceedings underlying the administrative search in this case. The application for the administrative warrant was very brief, stating only:

The Department would urge that a finding of the following factual elements would support the issuance of an administrative search warrant:

    1)    that an assessment of tax has been made against the taxpayer,

    2)    that notice and demand have been mailed to the taxpayer, and service will be attempted at time of activity,

    3)    pursuant to section 453B.9 . . . this assessment is a jeopardy assessment and subject to immediate collection,

    4)    the property subject to seizure[] presently exists at the premises sought to be searched and that the property either belongs to the taxpayer or is property upon which a lien exists for the payment of the taxes.

Significantly, the application did not recite facts or even claim that facts existed from which the court could find that the collection of taxes was in jeopardy. In fact, the application did not even state that the administrator "believed" (in the words of section 453B.9) that the assessment was in jeopardy. Exigency, which could show an assessment was in jeopardy, did not seem to be a factor, considering that the department was informed of Carter's possession of marijuana "soon after" the March 1997 search, but did not apply for the administrative warrant until December 4, 1997. *See G.M. Leasing Corp.*, 429 U.S. at 359, 97 S. Ct. at 631, 50 L. Ed. 2d at 547 (two-day delay between observation of materials and entry of premises for purposes of seizure found to defeat claim of exigency).

The administrative search warrant that was issued by the court in response to the department's application merely stated that "[b]ased on sworn application made to the court, I have found that probable cause exists to believe" that at the residence of the defendant, property and records may be found relative to the tax assessment. The court made no finding regarding jeopardy.

## V. *Validity of the Administrative Search.*

A. *General principles regarding administrative searches.* The Supreme Court, in *G.M. Leasing Corp.*, held that a warrantless intrusion into an area protected by the Fourth Amendment was not justified merely because the search was conducted to enforce tax laws. The Court assumed the tax assessments and levies were proper, and the facts "necessarily establish[ed] probable cause to believe that assets held by petitioner were properly subject to seizure in satisfaction of the assessments." *Id.* at 351, 97 S. Ct. at 628, 50 L. Ed. 2d at 542-43. The Court held, however, that the federal statute allowing seizure of property to satisfy tax obligations by "distraint and seizure by any means" "does not refer to warrantless intrusions into privacy." *Id.* at 357, 97 S. Ct. at 631, 50 L. Ed. 2d at 546. It stated:

> The respondents urge that the history of the common law in England and the laws in several States prior to the adoption of the Bill of Rights support the view that the Fourth Amendment was not intended to cover intrusions into privacy in the enforcement of the tax laws. We do not find in the cited materials anything approaching the clear evidence that would be required to create so great an exception to the Fourth Amendment's protections against warrantless intrusions into privacy.

*Id.* at 355, 97 S. Ct. at 630, 50 L. Ed. 2d at 545. In answer to the government's argument in *G.M. Leasing Corp.* that *Boyd v. United States*, 116 U.S. 616, 6 S. Ct. 524, 29 L. Ed. 746 (1886), required a different result, the Court stated:

> We do not find in Boyd any direct holding that the warrant protections of the Fourth Amendment do not apply to invasions of privacy in furtherance of tax collection. Insofar as language in Boyd might be read so to state, we decline to follow those dicta into rejection of the basic governing principle that has shaped Fourth Amendment law.

*Id.* at 356, 97 S. Ct. at 630, 50 L. Ed. 2d at 546.

*G.M. Leasing Corp.* drew a clear line between seizures from areas protected by the Fourth Amendment, such as homes, and seizures from public areas, such as streets.

> It is one thing to seize without a warrant property resting in an open area or seizable by levy without an intrusion into privacy, and it is quite another thing to effect a warrantless seizure of property, even that owned by a corporation, situated on private premises to which access is not otherwise available for the seizing officer.

*Id.* at 354, 97 S. Ct. at 629-30, 50 L. Ed. 2d at 545.

*Adams* is also analogous to the present case in that, during the search of the defendant's home pursuant to an administrative distress warrant to seize property for drug taxes, officers found illegal drugs. The Indiana statute, like Iowa's section 453B.9, provided that all assessments for taxes due were considered jeopardy assessments. *See* Ind. Stat. 6-7-3-13 ("An assessment for the tax due under this chapter is considered a jeopardy assessment. The department shall demand immediate payment and take action to collect the tax due as provided by [statute]."). In *Adams* the court held that a search pursuant to this section, in which the assessment was deemed per se to be a jeopardy assessment, was unreasonable under the Fourth Amendment because the law gave officers "boundless discretion to intrude upon the privacy of the home," and noted that there was nothing in the record to suggest the defendant was about to abscond, hide assets, or destroy documents. *Adams,* 762 N.E.2d at 744. *Adams,* relying on the principle of fruit of the poisonous tree under *Wong Sun,* held that evidence seized during the administrative search was inadmissible at the criminal trial because the administrative search that yielded the evidence was unreasonable. *Adams,* 762 N.E.2d at 745.

*G.M. Leasing Corp.* and *Adams* are distinguishable from the present case in that those cases did not involve searches based on court-ordered

warrants. *G.M. Leasing Corp.* involved a search of a premises under the authority of a federal tax collection statute. *Adams* involved a search of a home under the authority of a state tax collection warrant. While these cases are distinguishable, they are significant because they illustrate the solicitude of courts for Fourth Amendment rights in the face of sweeping tax collection statutes. Moreover, if the administrative search warrant in this case was invalid, as we later conclude it was, the warrant must be disregarded in assessing the Fourth Amendment intrusion.

B. *The issuance of the administrative search warrant.* Iowa Code section 808.14 provides the statutory basis for administrative search warrants:

> The courts and other appropriate agencies of the judicial branch of the government of this state may issue administrative search warrants, in accordance with the statutory and common law requirements for the issuance of such warrants, to all governmental agencies or bodies expressly or impliedly provided with statutory or constitutional home rule authority for inspections to the extent necessary for the agency or body to carry out such authority, to be executed or otherwise carried out by an officer or employee of the agency or body.

Obviously, neither this statute, nor the Fourth Amendment, grant carte blanche authority to courts to issue administrative search warrants. Section 808.14 requires that administrative search warrants be issued "in accordance with the statutory and common law requirements for the issuance of such warrants." The Fourth Amendment requires that "reasonable legislative or administrative standards for conducting an inspection are satisfied" before an administrative search may be conducted. *O'Connor*, 480 U.S. at 723, 107 S. Ct. at 1500, 94 L. Ed. 2d at 726.

The problem in this case is that Iowa Code section 453B.9, on its face, makes all drug tax assessments jeopardy assessments, thereby opening the door to the issuance of administrative search warrants without

the necessity of showing jeopardy and without any reasonable legislative or administrative protections in place as required by the Fourth Amendment. *See O'Connor*, 480 U.S. at 723, 107 S. Ct. at 1500, 94 L. Ed. 2d at 726. As previously discussed, the application for the administrative search warrant did not even claim the assessment was in jeopardy, and the court that issued the warrant made no such finding. In fact, under section 453B.9, no such showing or finding is required; drug tax cases are automatically put on the fast track for collection proceedings, including searches.

### VI. *The Constitutionality of Iowa Code Section 453B.9.*

If a statute is amenable to two interpretations—one that would make it constitutional and the other that would make it unconstitutional—we interpret it in the former manner. *See* 2A Norman J. Singer*, Statutes and Statutory Construction* § 45.11, at 70-71 (2000 rev.).

> When possible, statutory provisions should be construed in such a way as to avoid unconstitutionality rather than simply void them on the basis of an interpretation which renders them constitutionally infirm. If the law is reasonably open to two constructions, one that renders it unconstitutional and one that does not, the court must adopt the interpretation that upholds the law's constitutionality. It would also be preferable to construe the statute to support constitutionality rather than to rewrite or try to improve the statute in some other way.

*Id.*

To construe section 453B.9 to allow the search of a residence without any showing that the assessment is in jeopardy and without any showing of "reasonable legislative or administrative standards" for conducting the search (*O'Connor*, 480 U.S. at 723, 107 S. Ct. at 1500, 94 L. Ed. 2d at 726) would doom the statute under the Fourth Amendment. We decline to construe section 453B.9 that broadly; while the expedited drug tax collection procedure might be permitted under other circumstances, when the Fourth Amendment is not implicated (*see G.M. Leasing Corp.,* 429 U.S.

at 354, 97 S. Ct. at 630, 50 L. Ed. 2d 545), it cannot be used under the circumstances of this case to search a premises protected by the Fourth Amendment.

We need not decide whether section 453B.9, in other circumstances, may constitutionally allow jeopardy assessments for the purpose of locating assets or otherwise aiding in the collection of taxes. We agree with the conclusion by the Indiana court, which limited the holding in *Adams*:

> Our holding that the search of Defendant's home was unreasonable is a limited one. In this case, government officers intruded upon the privacy of a home. Our conclusion that this intrusion was unreasonable does not affect the Department's ability to seize assets found in less private contexts. In fact, *G.M. Leasing* endorsed the government's power to institute tax liens, seize assets found in public places, and take other basic measures to collect taxes so long as they do not involve warrantless intrusions into the home.

*Adams*, 762 N.E.2d at 746.

For the reasons discussed, the administrative search violated Carter's Fourth Amendment rights, and the fruits of that search must be suppressed. We vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for a new trial.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED; CASE REMANDED**.

All justices concur except Hecht and Appel, JJ., who take no part.